MANHATTAN
COMPANY
*v.*
GREENWICH
BANK.

The President and Directors of the Manhattan Company *against* The President, Directors and Company of the Greenwich Bank, John R. Satterlee and others.

---

N. G. C. owed the Manhattan Co.; and on the 15th December, 1836, gave them his bond and a mortgage on real estate. On the 12th March, 1841, they foreclosed, sold and bought in; and there was a deficiency for which (under a transcript of their decree) they issued a *fi. fa.* which was returned *nulla bona.* On the 9th of October, 1838, the said N. G. C. had made a deed of trust, embracing the mortgaged premises, upon trust for the trustee to sell subject to mortgages or free from incumbrances and paying them off out of purchase money and in the meantime collect rents; and after payment of taxes and other ordinary charges, upon trust to pay, first, The Greenwich Bank a specified sum; and, afterwards, certain other creditors. The trustee collected and held rents; and the Manhattan Company now filed their bill, claiming them to make up the balance due them under the foreclosure. *Held,* (on a general demurrer interposed) that the rents which the trustee received were not a trust fund to keep down interest and that they belonged to the Greenwich Bank and should be paid in part of their debt.

---

Bill of the president and directors of the Manhattan Company (in New York) showed that about the fifteenth day of December, in the year one thousand eight hundred and thirty-five, Nathaniel G. Carnes, to secure the payment to the complainants of eleven thousand one hundred and seventy-five dollars on or before the 15th day of December, one thousand eight hundred and thirty-five, executed to them his bond conditioned for payment of such sum with interest at six and one-half *per cent. per annum,* and a mortgage (in which his wife joined) upon certain two lots of land and buildings at Poughkeepsie, county of Dutchess. That on the first day of May in the year one thousand eight hundred and thirty-seven the complainants released to the said Carnes a part of the said premises. (Description of the lots set forth.) That on the eighth day of May, one thousand eight hundred and thirty-seven, two thousand seven hundred and fifty dollars was paid on account of the principal and a like sum on the twelfth day of July, one thousand eight

*Oct.* 19, 1843.

*Mortgagor and Mortgagee.*

*Rents.*

*Trust and Trustee.*

hundred and thirty-eight, leaving due of principal five thousand six hundred and seventy-five dollars, and that large arrears of interest had accrued. And that, being so due, the complainants, on the twelfth day of March, one thousand eight hundred and forty-one, filed their bill of foreclosure and sale; and such proceedings were had that a reference took place to compute the amount due to the complainants on the said bond and mortgage, by whose report, on file, it appeared that the aforesaid balance of five thousand six hundred and seventy-five dollars of principal was due and interest, so that the aggregate amount due was six thousand six hundred and twenty-one dollars and seventy-six cents. That, thereupon, and on the thirty-first day of January, one thousand eight hundred and forty-three, a decree for sale was had and the property was sold thereunder and the complainants became the purchasers at three thousand dollars and, subsequently, they received a deed for the same. That the master who sold the premises had, in his report of sale, set forth that the whole amount due to the complainants for principal and interest upon their bond was six thousand seven hundred and fifty-six dollars and ninety-five cents; that the gross proceeds of sale were three thousand dollars, from which were deducted two hundred and four dollars and seventy-six cents (the taxed costs and expenses of sale). leaving to be applied on the debt of the complainants two thousand seven hundred and ninety-five dollars and twenty-four cents; and that, consequently, there remained, on the twenty-sixth day of May, one thousand eight hundred and forty-two, a deficiency due to the complainants of three thousand nine hundred and sixty-one dollars and seventy-one cents. That, as the complainants were informed and believed, the said report of sale was filed on the thirtieth day of May, one thousand eight hundred and forty-two; and the usual order entered that the same be confirmed within eight days, unless, &c., and that, no cause to the contrary being shown, the same became confirmed. That a copy of the docket of the decree against the said Nathaniel G. Carnes for such deficiency was on the eleventh day of the said month of June filed in the office of the clerk of the city and county of New York (the said Carnes being a resident thereof

at the time) and an execution was duly issued to the sheriff of New York; and which execution was, on the twenty-fifth day of July, one thousand eight hundred and forty-two, returned *nulla bona.* That no part of the deficiency had ever been paid. That the said Nathaniel G. Carnes was insolvent and utterly unable to respond.

That the said Nathaniel G. Carnes and wife, on the ninth day of October, one thousand eight hundred and thirty-eight, by a certain indenture dated that day, conveyed to John R. Satterlee, (a defendant) among other property the premises embraced by the said mortgage (and which conveyance was made after the payment of the said two sums paid on account) and subject, as respected the said mortgaged premises, to the balance due on the complainant's mortgage and another mortgage to Jonathan Goodhue & Co. *Habendum* to the said Satterlee, upon trust that the said John R. Satterlee should sell the premises embraced by the deed and execute deeds, subject to certain mortgages, including the mortgage of the complainants (or, free from incumbrances, paying off the said mortgages from the purchase money); and in the meantime, until such sale, to rent the premises and collect rents; and from the net proceeds of such sales or rents to pay all taxes, assessments, interest, insurance and expenses due and owing and all costs and charges expended in the execution, defence and management of the trust; and then to pay the president, directors and company of the Greenwich Bank the sum of two thousand five hundred dollars; and from the balance of the monies remaining in his hands to pay the several creditors mentioned in a certain schedule to the said deed annexed marked A. Second class, the sums of money set opposite to their names respectively or so much of all the said debts or sums of money as the said remaining trust monies would pay, being divided among them *pro rata* according to the several amounts of their debts as set opposite their respective names without any preference among them after paying all such costs, charges, incumbran- ces, monies, expenses and the said sum of money to the said the President, Directors and Company of the Greenwich Bank; and if any monies should be left, after paying the said moneys and performing the trust aforesaid, then to pay

1843.

MANHATTAN
COMPANY
v.
GREENWICH
BANK.

the same to the said Nathaniel G. Carnes or his personal representatives. That the said John K. Satterlee accepted the said deed and thereby became bound for the faithful performance of its trusts. That the instrument was acknowledged and recorded. The complainants claimed and insisted that the said John R. Satterlee was bound, under the covenants and trusts in the deed, to collect and receive the rents of premises, including those mortgaged to the complainants as aforesaid, until a sale thereof should be effected by him under the provisions of the said deed ; and out of such rents to pay, in the first place, all such taxes, assessments, interest, insurance and expenses as might be due or should become due from time to time on the premises until a sale, together with such costs and expenses as he might have been put to in executing the trusts, with the right to retain a reasonable commission before making any payment on account of the claim of the Greenwich Bank or on account of any other debts and claims secured by such deed ; and that it was the true intent and meaning of the said instrument and such was the proper construction to be given to the same ; that out of the said accruing rents the said Satterlee was to keep down and extinguish the interest as it accrued upon the mortgages then upon the assigned premises, including the mortgage of the complainants and the said Jonathan Goodhue & Co., according to their priority, until a final sale of the property by the said assignee under the terms of the said trust. That, as the complainants were informed and believed, the said John R. Satterlee, from the time of the execution and delivery of the said deed of trust until the sale under the decree in the complainant's suit for a foreclosure, had collected and received rent from the said premises and more than sufficient to pay all taxes, assessments, interest, insurance and expenses due and owing on the said premises at the time of such deed or that had accrued thereon previous to the sale as aforesaid and all costs, charges and expenses for the execution of the trusts and a commission. But, instead of paying and applying the same, as he was directed to do by the said deed, the said Satterlee had applied the same or a large portion thereof towards and on account of the claim of the said the President, Directors and Com-

pany of the Greenwich Bank or towards other claims; and allowed the interest on the said mortgage of the complainants to accumulate and to become largely in arrear, by reason whereof the deficiency on the sale of the mortgaged premises under the said decree for foreclosure and sale was greatly increased. That at the time of the payments to the Greenwich Bank, the said Satterlee was the president thereof. That the said Satterlee had made collections of rents under such trust deed for which he had made no application and rendered no account; and that there was then on deposit in the said Greenwich Bank, of such collections and standing in the name of the said John R. Satterlee as trustee or otherwise, the sum of nine hundred and fifty dollars or thereabouts, which the complainants claimed to be property applicable under the trusts in the said deed as far as the same would extend of the said deficiency. That the whole of such monies so on deposit arose from the said rents; and the complainants charged that the same ought, in equity, to be applied towards the extinguishment of the deficiency aforesaid. That the complainants had repeatedly demanded of the said Satterlee to account. *Prayer:* That the said John R. Satterlee might be decreed to render a full account to the complainants of his said trusteeship and of the monies received under the said trust deed and of the manner of their application; and, on such accounting, might be decreed to pay to the complainants the funds then in his hands as such trustee or such portion thereof as might be applicable to the complainant's said debt and also such monies as he should have paid on account of the said debt under the said deed, which he had neglected or omitted so to do and had paid otherwise, if such were the case; and that he might be restrained by injunction from paying over, &c. And for further relief.

General demurrer interposed.

Mr. *A. W. Bradford*, in support of the demurrer.

Mr. *John Slosson*, for the complainants.

THE VICE–CHANCELLOR:—The question presented by

the demurrer, upon the construction to be given to the trust of the assignment from Carnes to Satterlee of the ninth day of October, one thousand eight hundred and thirty-eight, under which both parties to this suit claim, is rather a diffi-' cult one to determine. The trust, as expressed, is susceptible of a meaning which would give to the complainants all that they claim by their bill; but, I think the true meaning is the one which the demurrer assumes, viz., that the trust was made solely for the benefit of the Greenwich Bank in the first instance, as a preferred creditor; and that the rents which the trustee should receive were not intended to constitute a trust fund applicable, at all events, to the keeping down of the interest on the mortgages and making it the imperative duty of the trustee so to apply it. The assignment was clearly intended to secure the debt of two thousand five hundred dollars to the Greenwich Bank. This appears to have been the leading object of the trust. The application of the rents to the taxes, assessments, interest on the mortgages and insurance, &c., is to be considered only as a power given to the trustee to be exercised according to his discretion for the purpose of preserving the property until he could effect a sale; but if the property should prove to be not worth preserving from a foreclosure and sale, as, it seems, that portion of it on which the complainants held a mortgage was not; then there was no obligation on the part of the trustee so to apply the rents. It does not appear from the bill that the complainants relied upon this provision in the assignment as a trust in their favor and forbore, in consequence, to proceed upon their mortgage or to take measures to intercept the rents upon the ground of an inadequacy of the security. Their remedy was that; and I am of opinion they have no right, now, to resort to this deed of assignment as containing any trust whatever for their benefit.

The demurrer must, consequently, be allowed and the bill be dismissed, with costs.